UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES RAY CATHY,<br>    Plaintiff,<br>    v.<br>R. KUZMICZ, et al.,<br>    Defendants. | Case No. 19-cv-05932-PJH<br><br>**ORDER RE: COMPLAINT** |

Plaintiff, a state prisoner, proceeds with a pro se civil rights complaint under 42 U.S.C. § 1983. He has paid the filing fee.

## DISCUSSION

### STANDARD OF REVIEW

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *Id.* at 1915A(b)(1),(2). Pro se pleadings must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only '"give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests."'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted). Although in order to state a claim a complaint "does not need detailed

factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The United States Supreme Court has recently explained the "plausible on its face" standard of *Twombly*: "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged deprivation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

**LEGAL CLAIMS**

Plaintiff describes many instances of interference with his legal mail and legal publications. He seeks money damages.

Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977). To establish a claim for any violation of the right of access to the courts, the prisoner must prove that there was an inadequacy in the prison's legal access program that caused him an actual injury. *See Lewis*, 518 U.S. at 349-51. To prove an actual injury, the prisoner must show that the inadequacy in the prison's program hindered his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement. *See id.* at 351, 354-55.

Prisoners enjoy a First Amendment right to send and receive mail. *See Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)). A prison, however, may adopt regulations or practices which impinge on a

2

prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." *See Turner v. Safley*, 482 U.S. 78, 89 (1987). The Turner standard applies to regulations and practices concerning all correspondence between prisoners and to regulations concerning incoming mail received by prisoners from non-prisoners. *See Thornburgh*, 490 U.S. at 413.

Prison officials may institute procedures for inspecting "legal mail," e.g., mail sent between attorneys and prisoners, *see Wolff v. McDonnell*, 418 U.S. 539, 576-77 (1974) (incoming mail from attorneys), and mail sent from prisoners to the courts, *see Royse v. Superior Court*, 779 F.2d 573, 574-75 (9th Cir. 1986) (outgoing mail to court). But "prisoners have a protected First Amendment interest in having properly marked legal mail opened only in their presence." *Hayes v. Idaho Correctional Center*, 849 F.3d 1204, 1211 (9th Cir. 2017). *See also O'Keefe v. Van Boening*, 82 F.3d 322, 325 (9th Cir. 1996) (the opening and inspecting of "legal mail" outside the presence of the prisoner may have an impermissible "chilling" effect on the constitutional right to petition the government). A plaintiff need not allege a longstanding practice of having his mail opened outside his presence in order to state a claim for relief. *Hayes*, 849 F.3d at 1218 (allegation that protected mail was opened outside plaintiff's presence on two separate occasions sufficient to state First Amendment claim).

"Legal mail" may not be read or copied without the prisoner's permission. *See Casey v. Lewis*, 43 F.3d 1261, 1269 (9th Cir. 1994), *rev'd on other grounds*, 518 U.S. 343 (1996). The Ninth Circuit has emphasized that there is a clear difference between *inspecting* outgoing legal mail for contraband and *reading* it under *Wolff*, 418 U.S. 539 at 577, such that prison officials may not circumvent this prohibition by reading an inmate's outgoing legal mail in his presence because this practice does not ameliorate the chilling effect on the inmate's Sixth Amendment rights. *See Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014) (*Nordstrom I*) (reversing district court's dismissal of the complaint for failure to state a claim after finding complaint stated a cognizable 6th Amendment claim based on prisoner's allegations that prison officials read his legal mail, that they claimed

3

entitlement to do so, and his right to private consultation with counsel was chilled); *Nordstrom v. Ryan*, 856 F.3d 1265, 1272 (9th Cir. 2017) (*Nordstrom II*) (on appeal after remand of *Nordstrom I*, holding that prison policy requiring officials to confirm that outgoing letters qualified as legal mail failed to meet standard that officials may inspect but not read outgoing legal mail). But again, prison officials may establish that legitimate penological interests justify the policy or practice. *See O'Keefe*, 82 F.3d at 327.

The deliberate delay of legal mail which adversely affects legal proceedings presents a cognizable claim for denial of access to the courts. *See Jackson v. Procunier*, 789 F.2d 307, 311 (5th Cir. 1986). Isolated incidents of mail interference without any evidence of improper motive or resulting interference with the right to counsel or access to the courts do not give rise to a constitutional violation, however. *See Smith v. Maschner*, 899 F.2d 940, 944 (10th Cir. 1990); *Morgan v. Montanye*, 516 F.2d 1367, 1370-71 (2d Cir. 1975) (no claim where letter from prisoner's attorney opened out of prisoner's presence in single instance).

Regulations limiting prisoners' access to publications or other information are valid only if they are reasonably related to legitimate penological interests. *See Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) (citing *Turner*, 482 U.S. at 89). The test is the same regardless of whether inmates solicit the communication from the publisher, or the publisher distributes a publication to inmates who have not requested it. *Crime & Justice America v. Honea*, 876 F.3d 966, 975 (9th Cir. 2017).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). *Accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action

4

did not advance legitimate penological goals, such as preserving institutional order and discipline). The prisoner must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action, and that the retaliatory action advanced no legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267-68 (9th Cir. 1997) (inferring retaliatory motive from circumstantial evidence).

"In a § 1983 or a *Bivens* action – where masters do not answer for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (finding under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and Rule 8 of the Federal Rules of Civil Procedure, that complainant-detainee in a *Bivens* action failed to plead sufficient facts "plausibly showing" that top federal officials "purposely adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race, religion, or national origin" over more likely and non-discriminatory explanations).

A supervisor may be liable under section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012). Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct, "[a] supervisor can be liable in this individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011) (citation omitted).

**Legal Box**

On August 2, 2018, plaintiff's appellate attorney mailed him a box of legal documents. Complaint at 4-5 of 116. The box was returned to the attorney as unapproved by defendant K. Love because it was not from an approved vendor. *Id.* at 5-

6 of 116. Plaintiff notified several defendants of what occurred through inmate appeals. *Id.* at 5 of 116. Defendants informed plaintiff on October 16, 2018, that the package was erroneously logged in by mailroom staff and sent to a warehouse and then returned to the sender. *Id.* at 18 of 116. Plaintiff was advised to have his attorney resend the package. *Id.* Plaintiff does not discuss if the package was resent and if he received it. To the extent plaintiff alleges a denial of access to the courts he must provide more information showing that there was an actual injury with respect to his efforts to pursue a non-frivolous claim concerning his conviction or conditions of confinement. Nor has plaintiff shown any violation with his right to receive legal mail. The mail was not opened out of his presence, rather it was accidentally returned to the sender. This fails to state a constitutional violation.

Furthermore, plaintiff does not describe the specific actions for many of the defendant in this claim. To the extent that the defendants were involved in the inmate appeals process, those allegations fail to state a claim. There is no constitutional right to a prison administrative appeal or grievance system. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). To the extent that plaintiff seeks to hold these defendants liable as supervisors, he has failed to show any personal involvement in the alleged constitutional violation. This claim is dismissed with leave to amend with respect to the legal standards set forth above.

**Legal Mail**

Plaintiff next argues that he was not allowed to be present when legal items were sent to him and examined by defendants. Complaint at 7 of 116. On March 12, 2018, plaintiff received a letter from the National Legal Professional Associates, Margaret A. Robinson Advocacy Center, that was properly marked as legal mail and opened in his presence. Complaint at 70 of 116. On April 19, 2018, he received another letter from the same center that was marked as not meeting the criteria for confidential mail and was not opened in his presence. *Id.* at 7, 70 of 116. Plaintiff notified defendants Reynolds and

Kuzmicz of this error, but they were not responsive. *Id.* at 7.[1] This is sufficient to state a claim against Reynolds and Kuzmicz.

### Legal Publications

Plaintiff states he was unable to receive issues of Prison Legal News and Human Rights Defense. *Id.* at 8 of 116. He states that defendants Hood, Hallock, Parry and Short knew the publications should be delivered but failed to do so. *Id.* This is sufficient to state a claim against these defendants.

### Retaliation

Plaintiff next alleges that defendants Kuzmicz and Thompson would come to the yard and intimidate plaintiff for filing appeals regarding his mail and have him patted down by yard officers. *Id.* at 8 of 116. He also states on a separate occasion he sent a legal letter with postage, but the letter was returned to him with the postage ripped off, and a defendant stated plaintiff could not send a letter with a used stamp. *Id.* Plaintiff states that it was not a used stamp and the stamp was ripped off in retaliation for his protected conduct. Plaintiff has failed to present sufficient allegations to demonstrate retaliation and that the defendants' actions were motivated by plaintiff's protected conduct. This claim is dismissed with leave to amend to provide more information.

### CONCLUSION

1. The complaint is **DISMISSED** with leave to amend in accordance with the standards set forth above. Plaintiff may also inform the court that he only wishes to proceed with the claims found cognizable above and the remaining claims will be dismissed with prejudice. He must inform the court of his decision by **December 6, 2019**. If plaintiff chooses to file an amended complaint, it must be filed no later than **December 6, 2019**, and must include the caption and civil case number used in this order and the

---

[1] A letter of discovery responses sent to plaintiff from the California Attorney General's Office was also returned to the Attorney General's Office, but prison officials noted it was returned by the post office for lack of sufficient postage, not the prison. Complaint at 83, 91 of 116.

words AMENDED COMPLAINT on the first page.[2]  Because an amended complaint completely replaces the original complaint, plaintiff must include in it all the claims he wishes to present.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).  He may not incorporate material from the original complaint by reference.

2. It is the plaintiff's responsibility to prosecute this case.  Plaintiff must keep the court informed of any change of address by filing a separate paper with the clerk headed "Notice of Change of Address," and must comply with the court's orders in a timely fashion.  Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

**IT IS SO ORDERED.**

Dated: November 6, 2019

*/s/ Phyllis J. Hamilton*
PHYLLIS J. HAMILTON
United States District Judge

---

[2] Plaintiff is also informed that all claims must be included in the body of the amended complaint, only adding exhibits is insufficient.  He must describe the specific actions of individual defendants and state how they violated his constitutional rights.